A90A0455. SOLOMON v. THE STATE.
(394 SE2d 570)

SOGNIER, Judge.

Brian Solomon was convicted of arson in the first degree, and he appeals.

1. Appellant enumerates the general grounds. Appellant was convicted of setting fire to the home he shared with his wife, Robin Solomon. The evidence established that appellant and Ms. Solomon were in the process of divorcing. The couple had discussed the matter with an attorney a few weeks earlier and initial settlement documents had been drawn providing that appellant was to receive the home in the division of the couple's property. The documents, however, did not detail the responsibilities involving the mortgage payments on the

home, and Ms. Solomon and the attorney testified that she declined to sign the documents until those matters were clarified. After an argument on Friday, January 6, 1989 over appellant keeping a loaded shotgun in the master bedroom while his minor daughter (from a previous marriage) was in the house, appellant threatened Ms. Solomon with a pistol and she left the home. Ms. Solomon took with her not only clothing but also her furs, jewelry, and her Rolex watch.

On Monday, January 9, 1989, a sergeant with the Whitfield County Sheriff's Department arrived at the home to serve appellant with Ms. Solomon's petition for divorce and an ex parte order awarding Ms. Solomon the temporary use and possession of the home, with a hearing on the matter set for January 17th. Appellant explained he was expecting someone from the Sheriff's Department in regard to a theft on the premises and asked the sergeant if he could return later that afternoon. The sergeant said he would not be able to do so, but would return the following morning. The sergeant testified that he asked appellant not to say anything and appellant agreed not to tell anyone about the sergeant's delay in serving the papers so that the sergeant would not get into trouble.

Richard Joseph, appellant's neighbor, testified he stopped by the Solomon home around 4:00 p.m. and found appellant watching television. After Joseph returned to his own home, he called appellant after 5:00 p.m. and invited him to dinner. Joseph was unable to state precisely when appellant arrived, testifying it was "right around five-thirty" but also acknowledging he had told investigators at the scene that appellant arrived between 5:30 and 6:00 p.m. Conflicting testimony was presented regarding how long appellant was at the Joseph home before Joseph's stepson first heard the burglar alarm at the Solomon residence, the time estimates ranging from 20 to 60 minutes. The stepson stated that upon hearing the alarm, he looked, saw smoke coming out of the house, and noticed that Ms. Solomon's car was at the back of the home. The stepson and other neighbors testified that they saw smoke streaming from the home around 6:30 p.m. The fire department was contacted, and appellant and the Josephs went to the fire scene. Testimony was presented that appellant approached his wife, asked her if he could save anything from the house, then began to accuse her of setting fire to the house. Appellant, who, according to several witnesses, was intoxicated, also accused others of setting fire to the house. One neighbor, who had never met appellant before the fire, described appellant's behavior as "unconcerned." Others testified appellant appeared "upset." Appellant later scuffled with firefighters who prevented him from entering the house to recover his belongings.

Robert Cochran, a neighbor, testified that Ms. Solomon came to his house and told him her home was on fire. He described her as

"act[ing] a little anxious"; his stepdaughter said Ms. Solomon appeared "[r]eal nervous and scared." Cochran went to the house, but when he realized his fire extinguisher would not avail the situation, he got Ms. Solomon's car keys and moved her car out of the driveway. Cochran testified that Ms. Solomon's car was filled with clothing and boxes.

Evidence established that the house was reasonably insured for its value and the value of the personal belongings inside, and that appellant was under no financial difficulties. Fire investigators testified that the remains of electronic equipment and other valuables were found in place in the home and there was no evidence that any of appellant's personal belongings had been removed from the residence prior to the fire.

Ms. Solomon testified that after she left the home on Friday, January 6th, she stayed with Dena and John Bush and called appellant twice over the weekend. She stated appellant asked her to return home, which she declined to do. On Monday, January 9th, she met with her attorney and obtained the court order. She then went to the boutique she co-owned. She telephoned appellant three times that day but made no mention of the order she had obtained. However, Ms. Solomon testified that appellant's reference in a 5:30 p.m. telephone call to the attorney she had retained indicated to her that appellant knew, without her telling him, about the divorce pleadings. Appellant informed her that he was not going to leave the home but that she could return to get more clothing. Ms. Solomon testified appellant called again at 5:45 p.m. to ascertain she would come to the home at 6:00 p.m. Ms. Solomon stated she worked until 5:55 p.m., then drove to a convenience store for groceries, after which she retrieved her clothing from the Bushes' home. She stated she arrived at her home at 6:25 p.m. and noticed smoke coming out of the house. After stopping at the mailbox she drove to the back of the home, but when she opened the kitchen door, black smoke came out, so she went to the Cochrans' home to contact the fire department. She testified that when appellant arrived on the scene, his first words to her were "what have you done?"

John and Dena Bush testified that Ms. Solomon arrived at their condominium around or just after 6:00 p.m. and spent two or three minutes to get "what little clothes she had" before departing. Carolyn Davis, a neighbor, testified that when she returned to her home around 6:25 p.m. she saw none of her neighbors driving into the neighborhood then, but that she saw Ms. Solomon's car stopped at the mailbox to the Solomon home at that time.

The State presented extensive testimony by several experts detailing why in their opinion the fire was incendiary in nature and the reasons for their determination that it was caused by an accelerant.

One expert, Claude Nix, opined that based on the damage the fire had done in the den (where it had originated), the fire could have been burning "twenty to thirty minutes or more" at 6:52 p.m., the time the fire department first poured water on the fire. Given the 30-minute figure on cross-examination, Nix acknowledged the fire could have been set as late as 6:22 p.m.

"In an arson case, the corpus delicti consist[s] in the proof of three fundamental facts: first, a burning; second, that a criminal agency was the cause of the burning; and, third, that the defendant was the criminal agency. [Cit.]" *Cook v. State*, 146 Ga. App. 353, 354 (246 SE2d 347) (1978); see also *Parker v. State*, 181 Ga. App. 590 (1) (353 SE2d 83) (1987). In the case sub judice, the first element is uncontroverted, and the evidence as to the second element, while contested at trial, was sufficient to enable a jury to determine beyond a reasonable doubt that the fire in the Solomon residence was not the result of accident. The third element, that appellant was the criminal agency, is not so easy of accommodation. The evidence here reveals the acrimonious dissolution of the marriage between appellant and Ms. Solomon. Both had motive: the home they had shared was insured for over $180,000. The evidence is uncontroverted that appellant's personal possessions were destroyed in the fire; it is likewise uncontroverted that Ms. Solomon's valuable personal possessions had been removed days prior to the fire. Although appellant had received notification the morning of the fire that he was required to vacate the premises, the evidence indicates the couple intended for appellant to keep the home after the divorce, and Ms. Solomon acknowledged that the court order she obtained had granted her only temporary possession of the home. Both appellant and Ms. Solomon had access to the home; both had the opportunity to be on the premises prior to 6:22 p.m. Contrary to the State's argument, the testimony of Davis that she saw Ms. Solomon at the mailbox around 6:30 p.m. does not exclude Ms. Solomon from any suspicion of setting the fire, in that while Davis' testimony is consistent with Ms. Solomon's testimony regarding her activities at 6:30 p.m., Davis did not see Ms. Solomon drive into the neighborhood and could not testify how long Ms. Solomon had been at the home when Davis first noticed her.

" 'To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis of guilt, save that of the guilt of the accused. [OCGA § 24-4-6.] As the State correctly asserts in its brief, the question of whether every other reasonable hypothesis has been excluded is generally a question for the jury. On the other hand, the trial court is authorized, as usual, to take the case from the jury and direct a verdict of acquittal if the State clearly fails to meet its burden. Should a trial court decline to direct the verdict

and the jury then finds the defendant guilty, we are obliged to review the evidence in a light most favorable to the jury verdict. However, we will not be blinded by the jury verdict when a reasonable hypothesis of innocence appears from the evidence or the lack thereof.' . . . [Cit.]" *Dawson v. State*, 183 Ga. App. 94, 96-97 (2) (357 SE2d 891) (1987). "The evidence relied upon by the State to connect [appellant] to the crime was consistent with [appellant's] guilt, but being entirely circumstantial, we cannot ignore the appropriate rule pertaining to circumstantial evidence ([cit.]) nor can we agree that the evidence was inconsistent with any theory other than that the appellant deliberately caused the burning. It follows that the evidence, as a matter of law, did not, as a whole, establish guilt beyond a reasonable doubt. [Cit.] At best, the evidence in this case raises a suspicion against [appellant], but we do not think it connects [him] with the crime beyond a reasonable doubt. [Cits.]" *Cook*, supra at 354-355 (1).

2. In view of our disposition of the enumeration of error based on the general grounds, we need not adjudicate the remaining enumeration.

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MAY 3, 1990 —
REHEARING DENIED MAY 18, 1990 — ■

*William W. Keith III, Stephen A. Williams*, for appellant.
*Jack O. Partain III*, District Attorney, *David T. Blackburn*, Assistant District Attorney, for appellee.